UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SFR SERVICES LLC, a/a/o John Braun
and Barbara Braun,

      Plaintiff,

v.                                                        Case No. 2:19-cv-466-JLB-MRM

GEOVERA SPECIALITY INSURANCE
COMPANY,

      Defendant.
_____/

## **ORDER**

John and Barbara Braun ("the Brauns") are the former owners of a residential property in Fort Myers ("the Property"), which was insured by Defendant GeoVera Specialty Insurance Company ("GeoVera"). After Hurricane Irma purportedly damaged the Property's roof, the Brauns hired Plaintiff SFR Services LLC ("SFR") to replace it. As payment, the Brauns assigned a portion of the benefits under their insurance policy to SFR.

Before SFR moved forward with replacing the roof, it submitted a claim to GeoVera. But GeoVera determined that any damage caused by Hurricane Irma was less than the Policy's deductible. After SFR sued GeoVera for breach of contract, the Brauns sold the Property to homeowners who seem to have no interest in hiring SFR to actually replace the roof. Accordingly, GeoVera now moves for summary judgment based on the purported "impossibility" of SFR's performance. (Doc. 63.) GeoVera also raises a number of arguments regarding SFR's calculation of

damages, its alleged submission of sham affidavits, and certain "public policy concerns" this Court should consider.

The Court is unpersuaded by GeoVera's arguments. As a third party to the assignment, GeoVera cannot challenge its validity by way of any purported "impossibility." And while the sale of the Property may impact SFR's recovery, it appears that SFR could at least recover the actual cash value of the depreciated roof. Accordingly, GeoVera's motion for summary judgment is **DENIED**.

## BACKGROUND

The Brauns lived at the Property from June 2000 to May 2019. In September 2017, Hurricane Irma made landfall in southwest Florida and purportedly caused some damage to the Property. The Brauns spent the next year paying various contractors for repairs, including replacing their pool screen, repairing their lanai bar, and fixing a leak in the roof. (Doc. 66-2.) In November 2018, more than a year after the storm, the Brauns submitted to GeoVera: (a) a claim for replacement of the roof, and (b) an assignment of benefits under the Policy to SFR. (Doc. 66-9 at 1.)

The Property was inspected at least three times after the claim was submitted. First, an independent adjuster working on behalf of GeoVera concluded that any covered loss caused by Hurricane Irma was less than the Policy's deductible. (Id. at 11–21.) GeoVera then retained Forge Engineering, Inc. ("Forge") to conduct another inspection. Forge concluded that the Property's roof showed signs of hurricane damage and needed to be replaced. (Id. at 70–76.) In response, GeoVera retained Haag Engineering ("Haag"), which concluded that most of the damage to the roof was caused by conditions unrelated to Hurricane Irma and not

2

covered by the Policy. (Id. at 22–53.) Relying on Forge's report, SFR submitted an estimate to GeoVera in the amount of $142,033.49 for replacement of the Property's roof. (Id. at 77–84.) It also submitted a Sworn Statement in Proof of Loss claiming $131,593.49 (equal to the replacement cost of $142,033.49 minus a deductible of $10,440). (Doc. 63-1, Ex. 4.) Later, SFR revised its estimate to $154,718.28 based on invoices for the Brauns' previous repairs, none of which were performed by SFR. (Doc. 66-9 at 149–55.)

After reviewing the various estimates and reports, GeoVera determined that only $3,259.84 of the claim was covered, and that amount was below the Policy's deductible. (Id. at 9.) In April 2019, SFR filed a complaint against GeoVera in Florida state court for breach of contract. (Doc. 1-4.) By that point, the Property's roof still had not been replaced. With another hurricane season approaching and no payment from GeoVera in sight, the Brauns decided to sell the Property. (Doc. 63-2 at 69:1–10.) Its new owners, the Kellys, were apparently informed by the Brauns of the situation with the roof. (Doc. 63-1 at 104:10–16; Doc. 63-2 at 49:19–50:4.)

But rather than hire SFR, the Kellys accepted a discount on the Property's price and elected to deal with the roof on their own. (Id.) On May 14, 2019, the Brauns executed a warranty deed for the Property to the Kellys. (Doc. 63-1, Ex. 5.) SFR's corporate representative testified that SFR has no records indicating that the Kellys intend to give SFR permission to replace the roof, and that he had "no

3

indication from the homeowners what their intentions are."[1] (Doc. 63-3 at 82.) Nearly two months later, on July 5, 2019, GeoVera removed the state-court action to this Court on the basis of diversity jurisdiction.[2] (Doc. 1.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In other words, summary judgment is warranted if a jury, viewing all facts and any reasonable inferences therefrom in the light most favorable to plaintiffs, could not reasonably return a verdict in plaintiffs' favor." Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1581 (11th Cir. 1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact . . . ." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the

---

[1] GeoVera argues that the Brauns' testimony about the Kellys' refusal to deal with SFR is inadmissible hearsay. But the testimony of GeoVera's corporate representative suggests, at the very least, that SFR has no operative contract with the Kellys. Moreover, the Kellys' hearsay statements could potentially be admissible at trial due to their independent legal significance. See Fed. R. Evid. 801(c), advisory committee's note to 1972 proposed rules; see also Cal. Trucking Ass'n v. Brotherhood of Teamsters, Loc. 70, 679 F.2d 1275, 1291 n.22 (9th Cir. 1981) ("[T]he statement had an operative effect in the nature of a contract rejection wholly apart from the truth of the assertion.").

[2] While the notice of removal did not provide the Court with a list of SFR's members, SFR later provided the Court with evidence that SFR's sole member at the time of removal was domiciled in Florida. (Docs. 15-1, 27-1.)

burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id.

## DISCUSSION

GeoVera's chief argument in favor of summary judgment is simple: (1) the Brauns' assignment to SFR was intended to compensate SFR for replacing the Property's roof, (2) the Kellys now own the Property and do not want to hire SFR to replace the roof, and therefore (3) SFR cannot prevail. After careful examination, the Court concludes that this argument fails. To explain why, the Court will begin with the first principles of insurance law. It will then apply those principles to the plain language of the assignment and the Policy. Finally, the Court will address GeoVera's remaining arguments.

**I. Under Florida law, property insurance benefits become fixed and assignable at the time of loss, irrespective of later changes in title.**

In Florida, property insurance contracts are enforceable only "for the benefit of persons having an insurable interest in the things insured as at the time of the loss." Fla. Stat. § 627.405(1) (emphasis added.) An insurable property interest is, therefore, "not determined by the concept of title." Aetna Ins. Co. v. King, 265 So. 2d 716, 718 (Fla. 1st DCA 1972); see also Banta Props., Inc. v. Arch Specialty Ins. Co., 553 F. App'x 908, 910 (11th Cir. 2014). If a policyholder has an insurable economic interest at the time of a covered loss, "[t]he right to receive the insurance proceeds [is] fixed at the time of the loss." Sea Isle Operating Corp. v. Hochberg, 198 So. 2d 336, 337 (Fla. 3d DCA 1967).

5

From these very basic principles, the Court can immediately draw two conclusions about this case. First, the Brauns clearly had an insurable interest in the Property at the time of the alleged loss—they lived in the Property when Hurricane Irma impacted Florida. Second, the Brauns' interest does not depend on whether they currently own title to the Property. So if the Brauns were the plaintiffs in this case, GeoVera's argument would probably fail. But, of course, the Brauns are not the plaintiffs in this case—SFR is the plaintiff. GeoVera argues that the Brauns' assignment of benefits to SFR is a nullity because the assignment was intended to compensate SFR for replacing the roof, and the Kellys have no intention of hiring SFR to do so. Once again, first principles do much of the lifting.

"[A]n assignable right to benefits accrues on the date of the loss, even though payment is not yet due under the loss payment clause." One Call Prop. Servs. Inc. v. Sec. First Ins. Co., 165 So. 3d 749, 754 (Fla. 4th DCA 2015). If an assignment is valid, the assignee "stands in [the] shoes" of the assignor and "has the same rights and status" that the assignor did. Pro. Consulting Servs., Inc. v. Hartford Life & Accident Ins. Co., 849 So. 2d 446, 447 (Fla. 2d DCA 2003) (citing Foster v. Foster, 703 So. 2d 1107, 1109 (Fla. 2d DCA 1997)). These principles of assignability are generally consistent for any contractual chose-in-action, and insurance benefits are no exception.[3] One Call Prop. Servs. Inc., 165 So. 3d at 753–54.

---

[3] Section 627.7153, Florida Statutes, which now governs assignment of post-loss benefits, has an effective date of July 1, 2019. The assignment in this case was executed on November 16, 2018.

6

As before, the Court can immediately draw some conclusions from these basic principles. The Brauns' right to benefits under the Policy not only became fixed at the time of the loss; it also became assignable at the time of the loss. And as a result, SFR now stands in the Brauns' shoes with respect to whatever benefits were assigned, regardless of whether the Brauns now own the Property. So far, so good. All that remains is for the Court to review the plain language of the assignment and determine what rights the Brauns assigned to SFR.

**II.   The plain language of the assignment provides that SFR was assigned all attendant rights and benefits for work performed or to be performed.**

As with any contract, the Court first looks to the plain language of the assignment to determine the parties' intent. BioHealth Med. Lab'y, Inc. v. Cigna Health & Life Ins. Co., 706 F. App'x 521, 524 (11th Cir. 2017). "[W]here a contract is clear and unambiguous, it must be enforced as written." Andersen Windows, Inc. v. Hochberg, 997 So. 2d 1212, 1214 (Fla. 3d DCA 2008). Undefined terms in a contract are typically read according to their ordinary meaning. See GEICO Marine Ins. Co. v. Shackleford, 945 F.3d 1135, 1143 (11th Cir. 2019) (citing Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165–66 (Fla. 2003)).

As relevant to this case, the assignment provides:

> I assign my insurance claim to SFR Services in consideration for SFR Services to complete the scope of work as agreed upon by SFR Services and my insurance company as documented in the final agreed upon insurance estimate.
>
> **ASSIGNMENT OF INSURANCE BENEFITS**: Owner assigns all insurance rights, benefits, proceeds, claims, and causes of action under any applicable insurance policies

7

> (collectively, "Benefits") to SFR Services, including without limitation claims for bad faith, attorney's fees, and costs under sections 624.155, 626.6541, 627.428, 57.041, and 92.231, Florida Statutes, for services rendered or to be rendered by SFR Services. Owner intends for all Benefits related to or for services rendered by SFR Services, related to SFR Services' labor, materials, and related costs ("Services") to be assigned solely and exclusively to SFR Services. . . . Owner makes this assignment in consideration for SFR Services' agreement to perform the Services, supply materials, and perform its obligations under this Agreement.

(Doc. 22-1.) Multiple Florida courts have construed similar assignments to mean that the insured is transferring all rights attendant to work performed (or to be performed), as opposed to all conceivable rights under the Policy. See, e.g., Sidiq v. Tower Hill Select Ins. Co., 276 So. 3d 822, 827 (Fla. 4th DCA 2019); Brito v. Heritage Prop. & Cas. Ins. Co., 276 So. 3d 990, 991, 993–94 (Fla. 3d DCA 2019); Nicon Constr., Inc. v. Homeowners Choice Prop. & Cas. Ins. Co., 249 So. 3d 681, 683 (Fla. 2d DCA 2018). In this case, SFR was going to replace the Property's roof. Assuming the roof damages are covered, the Brauns' assignment transfers to SFR all rights and benefits associated with that loss (under Sidiq, Brito, and Nicon), and therefore nothing precludes SFR from suing GeoVera to recover for the roof.[4]

## III. GeoVera's arguments in favor of summary judgment are unpersuasive.

GeoVera nevertheless claims that it is entitled to summary judgment, despite the clarity of the law set forth above. First, GeoVera mistakenly reads Sidiq, Brito,

---

[4] That said, SFR would not be entitled to benefits for work performed by other contractors (like the work reflected in the additional invoices that SFR submitted with its revised estimate).

and Nicon to mean that the assignment in this case requires work to be actually performed before the contractor is entitled to any benefits. (Doc. 63 at 8.) The Court can find nothing in those cases to support GeoVera's argument. As already explained, they stand for the proposition that a similarly worded assignment is limited to the services which the contractor rendered or will render, as opposed to "all [of the assignor's] rights to payment for the entire covered claim." Nicon Constr., Inc., 249 So. 3d at 683. At most, these cases mean that SFR's claim is limited to the roof, not that SFR is entirely barred from any recovery because they may no longer be able to repair the roof.

Next is GeoVera's central argument: the sale of the Property to the Kellys renders SFR's performance under the assignment "impossible." In other words, because SFR can no longer replace the roof, it cannot recover anything. (Doc. 63 at 7–9.) Even if that were a colorable argument, GeoVera could not raise it. A nonparty to an assignment cannot challenge the assignment's validity unless the challenge would render the assignment void ab initio. See SFR Servs., LLC v. Indian Harbor Ins. Co., No. 2:20-cv-583-JLB-NPM, 2021 WL 1165185, at *7 & n.7 (M.D. Fla. Mar. 26, 2021) (collecting cases); see also Griffin v. Coca-Cola Refreshments USA, Inc., 989 F.3d 923, 934 n.6 (11th Cir. 2021) (explaining that something is "void ab initio" if it has "no legal effect" and is "null . . . from the first moment when a contract is entered into" (citations omitted)).

A supervening impossibility does not render the contract void ab initio; a party is simply discharged from performing its remaining obligations to the extent

9

they can no longer be performed. See Marathon Sunsets, Inc. v. Coldiron, 189 So. 3d 235, 236 (Fla. 3d DCA 2016) ("Under the doctrine of impossibility of performance or frustration of purpose, a party is discharged from performing a contractual obligation which is impossible to perform and the party neither assumed the risk of impossibility nor could have acted to prevent the event rendering the performance impossible."); Chase Manhattan Bank v. Iridium Afr. Corp., 474 F. Supp. 2d 613, 621 n.4 (D. Del. 2007) ("[T]he Court is not persuaded that the case law supports Defendants' argument that a contract frustrated by impossibility of performance is void ab initio. Rather, it appears to the Court that the parties are discharged from performing their remaining obligations to the extent those obligations have become impracticable." (collecting cases)).

To be sure, SFR's inability to perform the repairs might limit its recovery in this case. But even so, SFR contends that it should at least be entitled to the actual cash value of the roof under Section I(D) of an addendum to the Policy titled "Master Endorsement – Florida." (Doc. 66-10 at 60.) Rather than refute this argument, GeoVera claims that SFR never made it known (until now) that it was seeking actual cash value in lieu of replacement cost. Claiming unfair surprise, GeoVera goes so far as to accuse SFR of submitting sham affidavits and fraudulent proofs of loss. (Doc. 67 at 2–6.) Having reviewed these accusations, the Court finds them to be overblown and declines to dignify them with further discussion.

In a similar vein, GeoVera argues that even if SFR is entitled to actual cash value, it has not provided the Court with any calculation of what the actual cash

value of the roof might be.  (Id. at ¶ 10.)  A plaintiff generally does not need to prove contractual damages with mathematical precision to survive summary judgment.  It is enough for the plaintiff to establish that damages exist and can be proven with reasonable certainty.  See, e.g., Nebula Glass Int'l, Inc. v. Reichhold, Inc., 454 F.3d 1203, 1212 (11th Cir. 2006); Lazovitz, Inc. v. Saxon Const., Inc., 911 F.2d 588, 591 (11th Cir. 1990).  SFR has submitted an affidavit from its corporate representative alleging that $154,718.28 is an accurate representation of the actual cash value for "the damages at issue in the claim."  (Doc. 66-5 at ¶ 25.)  The Court is skeptical of this estimate, considering it is equal to GeoVera's approximation of the roof's replacement cost plus the cost of repairs that SFR never performed.  (Id. at 17.)  But as GeoVera itself argues, deriving actual cash value from replacement cost is fairly simple; all you have to do is subtract depreciation.  (Doc. 67 at ¶ 9.)  Thus, assuming the underlying loss is covered, it would clearly be possible for SFR to establish damages at trial with reasonable certainty.  And it is not beyond the realm of possibility for replacement cost and actual cash value to be fairly close, depending on how depreciation is calculated.

Finally, GeoVera asks the Court to grant summary judgment based on "public policy considerations."  (Id. at ¶¶ 20–21.)  The first of these considerations is that SFR has not performed any repairs, and therefore the assignment is not "an actual 'something-for-something' arrangement."  (Id. at ¶ 20.)  There is a word to describe "something-for-something" in the common law of contracts—consideration.  But seeing as GeoVera is not a party to the assignment, it cannot challenge the

assignment's purported lack of consideration. See Lugassy v. Indep. Fire Ins. Co., 636 So. 2d 1332, 1335 (Fla. 1994). Another "public policy consideration" cited by GeoVera is the prospect of SFR receiving a "windfall" despite not performing any repairs. (Id. at ¶ 20.) Assuming there is no fraud or breach of contract, the Court fails to see why such a "windfall" is a problem. It is not entirely unusual for policyholders to simply pocket the actual cash value of a loss without repairing the reported damages. See, e.g., Francis v. Tower Hill Prime Ins. Co., 224 So. 3d 259, 260 (Fla. 3d DCA 2017). As an assignee of the previous policyholders, SFR stands in their shoes. The same goes for GeoVera's arguments concerning an "ulterior motive"—that is, a purported oral agreement between the Brauns and SFR to split the insurance money 80/20 if the Brauns sold the Property before the roof could be repaired. (Doc. 67 at ¶ 21.) Once again, without any proof of fraud or breach of contract, the Court fails to see why SFR cannot spend the money however it wants. Consequently, the Court rejects all of GeoVera's "public policy considerations" and denies its motion for summary judgment.

## CONCLUSION

For the reasons above, it is **ORDERED** that GeoVera's motion for summary judgment (Doc. 63) is **DENIED**.

**ORDERED** in Fort Myers, Florida, on May 12, 2021.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE